**REMAND / JS-6**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-6461-GW-DFMx | Date | October 18, 2021 |
|---|---|---|---|
| Title | *In Re Trust of Hazel N. Winchester, Established November 24, 2004, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Michael D. Anderson | Jasmin Yang, AUSA |
| | Mary A. Rousso |
| | Charles C. Cavanaugh |
| | Daniel R. Salas |

**PROCEEDINGS:**   **TELEPHONIC HEARING ON PETITIONER'S MOTION TO REMAND [9]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears argument. Based on the representation of Government's counsel that its claim has been satisfied and remand will not be opposed, the Court GRANTS the Petitioner's Motion as stated on the record. The Court will not award fees to Petitioner's counsel.

|  | : | 08 |
|---|---|---|
| Initials of Preparer | JG | |

*In Re Trust of Hazel N. Winchester, Established November 24, 2004 et al*; Case No. 2:21-cv-06461-GW-(DFMx); Tentative Ruling on Petitioner's Motion to Remand

## I.   Background

On May 10, 2018, Petitioner Shelia Mitchell ("Mitchell or "Petitioner") originally filed her petition concerning the Hazel N. Winchester 2004 Trust (the "Trust") in May 2018 in Los Angeles County Superior Court, Probate Department (the "Probate Court") pursuant to Probate Code §§ 17200(a) and 850.    *See* Verified Petition for Relief in Case No. 18STPB04469 ("Petition" or "Pet.") ¶¶ 1-11, ECF No. 1-1.  The Petition accuses Respondent William Bernard Winchester ("William") of engaging in a scheme to defraud and embezzle funds from the Trust with his childhood friend, Respondent Ronald McCoy ("McCoy").  Pet. ¶¶ 13, 24.   Other Respondents purportedly provided loans to Respondents William and McCoy (or were parties to analogous instruments) based on their fraud.[1]  *See* Pet. ¶¶ 7-9; Notice of Removal ¶¶ 4-12, ECF No. 1.  The Petition included causes of action for: (1) Breach of Trust; (2) Fraud; (3) Conversion; (4) Cancellation of Instruments; (5) Declaratory Relief to Confirm Trustee and Trust Property; (6) Declaratory Relief to Recover Property and Quiet Title (Probate Code § 850); and (7) Constructive Trust.  Petition ¶¶ 37-100.

On March 12, 2021, Mitchell filed a First Amended Verified Petition ("FAP") which: (1) added two new causes of action for quiet title and construction trust; and (2) added as respondents Lawyers Title Insurance Corporation, Fidelity National Title Insurance Company ("Fidelity"), Mid America Mortgage, Inc. ("Mid America"), U.S. Department of Housing and Urban Development ("HUD"), and Marcia L. Fudge, Secretary of the U.S. Department of Housing and Urban Development (HUD and Fudge are referenced collectively as "Government Respondents").  *See* FAP ¶¶ 12-16, 128-34, Exhibit C to Petitioner's Request for Judicial Notice, ECF No. 9-1.  On August 10, 2021, the Government Respondents removed the probate action (*i.e.* Case No. 18STPB04469) to this Court.  *See* Notice of Removal.

Before the Court is Petitioner's Motion to Remand.  *See* Petitioner's Motion to Remand

---

[1] The Respondents identified in the Petition who provided loans or were parties to other instruments obtained by Respondents William and McCoy are Lantzman Investments, Inc.; United Security Financial Corporation; and the County of Los Angeles.  *See* Petition ¶¶ 7-9.

;  Petitioner's Motion to Remand at 6-7 n.3, ECF No. 9

("Motion" or "Mot."), ECF No. 9.  Respondent Mid America Mortgage, Inc. joins in the Motion. *See* Joinder of Claimant and Respondent Mid America Mortgage, Inc., ECF No. 15.  Respondent HUD has provided an Opposition ("HUD Opp."), *see* ECF No. 16, as well as Respondent Fidelity National Title Insurance Corporation ("Fidelity Opp."), *see* ECF No. 17.  Petitioner Mitchell and Respondent Mid America have provided a Reply, *see* ECF No. 18.

A.  Factual and Procedural Background

On November 24, 2004 Trustor Hazel Winchester created the Trust (a revocable intervivos trust) to hold, administer, and distribute her property upon her death.  *See* FAP ¶ 1; Mot. at 6.[2]  The Trust became irrevocable upon the Trustor's death on July 26, 2009.  *Id.* Petitioner Mitchell is one of Trustor Hazel Winchester's three children, and one of three primary beneficaries of the Trust.  FAP ¶¶ 6-7.  Each of the three children received an undivided one-third interest in the Trust upon the death of the Trustor.  *Id.* ¶ 27.  Mitchell was designated as successor Trustee of the Trust because her siblings, Cynthia Wilburn[3] ("Cynthia") and Respondent William, the previous successor Trustees, both passed away.[4]  *Id.* ¶¶ 26-31.  The main asset of the Trust is a piece of real property located at 10610 South Saint Andrews Place, Los Angeles, CA 90047 (the "Property").  *Id.* ¶ 2.

Petitioner accuses Respondents William and McCoy of engaging in a scheme to defraud and embezzle from the Trust.  *Id.* ¶ 21.  Respondent McCoy first moved into the Property in early 2014, displacing tenants who paid rent, while not paying rent himself.  *Id.* ¶ 32.  In September 2014, Respondent William, during his time as successor Trustee and without notice or consent of the beneficiaries, executed a grant deed transferring legal title over the Property to Respondent McCoy.  *Id.* ¶ 34.  Respondent McCoy then took out a loan for $228,000, secured by the Property and kept for William and McCoy's personal use, before transferring title to the Property back to the Trust the following day.  *Id.*  Respondent McCoy later informed Petitioner that the loan had not been repaid and Respondents William and McCoy had obtained extensions on the loan, causing the interest rate to skyrocket.  *Id.* ¶ 35.

---

[2] As discussed *infra*, the Court **GRANTS** the Petitioner's request for judicial notice and will reference delineated documents from the state court proceedings in this section.

[3] At one point in the FAP, Cynthia Wilburn is referenced as "Cynthis Williams."  *See* FAP ¶ 4.

[4] At the death of Trustor Hazel N. Winchester on July 26, 2009, Cynthia became the trustee of the Trust until her death on August 12, 2012.  *See* ECF No. 9-1 at 251-52 of 355.  Upon her death, William became trustee until his death on January 7, 2016.  *Id.*

Respondent McCoy, while still residing at the Property without paying rent, took actions to prevent the Property from being sold and also prevented Petitioner from paying back the $228,000 loan secured by the Property. *Id.* ¶¶ 36-38. In June 2016, Respondent McCoy recorded an Affidavit of Death of Trustee, which alleged that Respondent William was the Trustee and that Respondent McCoy, not Petitioner, was the successor Trustee of the Trust. *Id.* ¶ 39. On June 9, 2016, Respondent McCoy fraudulent recorded a quitclaim deed attempting to transfer the Property from the Trust to Respondent McCoy. *Id.* ¶ 40. On June 27, 2016, Respondent McCoy fraudulently recorded a grant deed, which purportedly transferred the Property from the Trust to Respondent McCoy. *Id.* ¶ 41. On November 3, 2016, Respondent McCoy obtained a $356,125 loan from Respondent United Security Financial Corporation, secured by the Property, and evidenced by a Deed of Trust. *Id.* ¶ 42. This loan was eventually assigned to Respondent Mid America in 2019. *Id.* ¶ 43. Petitioner discovered Respondent William and McCoy's scheme only after she became the successor Trustee upon William's death. *Id.* ¶ 34, 45. Upon her discovery, she promptly filed the Petition in May 2018 in the Probate Court. In September 2018, Petitioner also recorded a Notice of Pendency of Action ("Lis Pendens") related to the Property with Respondent Los Angeles County. *See id.* ¶ 45; Lis Pendens, RJN, Exh. B.

After the Petition had been filed, as part of HUD's Home Affordable Modification Program[5] ("HAMP"), Respondent McCoy executed a Deed of Trust in favor of HUD (the "HUD Deed"). *Id.* ¶ 46. Respondent Mid America acknowledges that HUD's lien arises under the HAMP program and that HUD paid $82,500.29 to Mid America in partial payment of the amounts then due under the 2016 loan. *See* Opp. at 1-2. Respondent McCoy passed away in February 2020, and his daughter, Cierra McCoy, was granted special letters of administration over the McCoy Estate. *See* Petition for Letters of Special Administration of the Estate of Ronald McCoy, RJN, Exh. D; Minute Order appointing Cierra McCoy as Special Administrator, RJN, Exh. E. Cierra McCoy listed the Property as an asset of the McCoy's estate, and the McCoy estate action, *In Re Estate of McCoy*, LASC Case No. 20STPB03017, was deemed

---

[5] The Government describes the HAMP program as one where HUD "pays mortgage lenders holding defaulted mortgages a partial claim to reduce the amount in default and defers the repayment of mortgage principal through an interest-free subordinate mortgage that is not due until the first mortgage is paid off. As a result, the borrower's pre-existing defaulted mortgage is brought current, the borrower's principal loan balance is reduced, and [] the repayment owned to HUD on account of the partial claim is deferred." Notice of Removal ¶ 1.

related to the instant trust action.  *See* Mot. at 9-10; *see also* Petition for Letters of Special Administration of the Estate of Ronald McCoy; Minute Order relating the Trust Action and the McCoy Estate Action, RJN, Exh. G.

The FAP's fourth cause of action seeking to cancel instruments brings the Government Respondents into the probate action as the Petition seeks to cancel the HUD Deed on the basis that Respondent McCoy had no right, title, interest, or ability to encumber the Property.  Notice of Removal ¶ 5.  Petitioner, Cierra McCoy, and Mid America had reached a settlement agreement and were seeking approval of the Probate Court when the Government Respondents removed the action to this Court.  *See* Petition to Approve Settlement Agreement, RJN, Exh. H. The removal was based on 28 U.S.C. §§ 1444 and 2410 because Petitioner seeks to quiet title to real property on which the United States has a lien.  *Id.* ¶ 7.

## II.    Legal Standard

Federal courts operate under the presumption that they do not have jurisdiction over state-law causes of action.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "The defendant bears the burden of establishing that removal is proper" and removal statutes are "strictly construed against removal jurisdiction."  *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *see also Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992) ("[J]urisdiction must be rejected if there is any doubt as to the right of removal.").

Generally speaking, "the presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The mere existence of a potential defense based on state law is generally insufficient to confer removal jurisdiction.  *Id.*  Therefore, "[t]he rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Id.*  28 U.S.C. § 1444 states that "[a]ny action brought under Section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States."  28 U.S.C. § 2410 states that "the United States may be named a party in any civil matter or suit in any district court or in any State court having jurisdiction of the subject matter . . . to quiet title to, [or] to foreclose a mortgage or other lien upon, . . . real or personal property on which the United States has or claims a mortgage or other lien."

There is a probate exception, however, that "reserves probate matters to state probate courts and precludes federal courts of disposing of property in the custody of a state court." *Goncalves By and Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1251 (9th Cir. 2017). The exception exists because the equity jurisdiction conferred by the Judiciary Act of 1789, taken from the English Court of Chancery in 1789, did not extend to probate matters. *See Markham v. Allen*, 326 U.S. 490, 494 (1946). Federal courts still maintain jurisdiction to entertain suits to determine "the rights of creditors, legatees, heirs, and other claimants against a decedent's estate, . . . so long as the federal court does not *interfere with the probate proceedings*.'" *Id.* (emphasis added). Interfering with probate proceedings involves "disturbing or affecting the possession of property in the custody of a state court." *Marshall v. Marshall*, 547 U.S. 293, 311 (2006).

**III.   Discussion**

A. Judicial Notice

Petitioner request judicial notice of the following ten documents in support of her motion to remand:

- Verified Petition, filed on May 10, 2018, in *In Re Trust of Hazel Winchester*, LASC Case No. 18STPB04469. RJN, Exh. A.
- Lis Pendens, recorded on September 14, 2018 related to *In Re Trust of Hazel Winchester*, LASC Case No. 18STPB04469. RJN, Exh. B.
- First Amended Verified Petition, filed on March 12, 2021 in *In Re Trust of Hazel Winchester*, LASC Case No. 18STPB04469. RJN, Exh. C.
- Petition for Letters of Special Administration of the Estate of Ronald McCoy, filed on April 09, 2020 in *In Re Estate of McCoy*, LASC Case No. 20STPB03017. RJN, Exh. D.
- Minute Order appointing Cierra McCoy as Special Administrator, dated September 3, 2020 in *In Re Estate of McCoy*, LASC Case No. 20STPB03017. RJN, Exh. E.
- Motion to Substitute Cierra McCoy, filed on February 2, 2021, in *In Re Trust of Hazel Winchester*, LASC Case No. 18STPB04469. RJN, Exh. F.
- Minute Order relating the Trust Action and the McCoy Estate Action, dated September 2, 2020, issued in *In Re Estate of McCoy*, LASC Case No. 20STPB03017. RJN, Exh. G.
- Petition to Approve Settlement Agreement, dated July 13, 2021, in in *In Re Trust of Hazel Winchester*, LASC Case No. 18STPB04469. RJN, Exh. H.
- Notice of Removal, filed on August 11, 2021, in *In Re Trust of Hazel Winchester*, LASC Case No. 18STPB04469. RJN, Exh I.
- Minute Order, dated August 12, 2021, in *In Re Trust of Hazel Winchester*, LASC Case No. 18STPB04469. RJN, Exh. J.

*See* RJN at 2-3.

Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  All ten documents are public records from prior state court proceedings and the contents of the documents are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Respondents do not oppose the request for judicial notice.  As the Court "may take judicial notice of undisputed matters of public record including documents on file in federal or state courts," the Court **GRANTS** the request for judicial notice.  *Harris v. Cty. Of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citations omitted).

B.  Probate Exception

Government Respondents argue that the action was properly removed under 28 U.S.C. § 1444 and 28 U.S.C. § 2410 because HUD's lien arises under the federal HAMP program and the federal government has an "absolute right to remove quiet title cases in which it is named as a defendant."  *See* HUD Opp. at 9.  The Government Respondents also note that there is a circuit split as to whether the probate exception even applies to federal question jurisdiction, as here, compared to federal diversity jurisdiction.  *See id.* at 9 n.5.  In return, Petitioner and Respondent Mid America argue that the probate exception requires remand in this instance because a federal court is improperly "interfere[ing] with the probate proceedings."  Reply at 7.  Petitioner and Mid America also requests costs and fees because HUD removed the action one day before the probate court was to conduct a hearing regarding the pending settlement agreement.  Mot at 5-6.

As a threshold issue, the Court notes that, to the extent the Ninth Circuit has spoken on the issue, it has held that the probate exception can be applied to cases involving federal question jurisdiction.  *See In re Marshall*, 392 F.3d 1118, 1131-32 (9th Cir. 2004) ("[T]his court has said that, in applying the probate exception, '[t]he evil to be avoided is federal interference with state probate proceedings.'  This rationale is as relevant to federal question cases as it is to diversity ones." (internal citations omitted)).  But *Marshall* was reversed by the Supreme Court, and the Supreme Court did not directly address whether the probate exception applied to federal question jurisdiction.  *See generally Marshall v. Marshall*, 547 U.S. 293 (2006).  And while the Supreme Court has previously applied the probate exception in federal question cases, the Court also

recognizes that the arguments supporting application of the probate exception are far stronger in cases of diversity rather than federal jurisdiction. *See Markham*, 326 U.S. at 493-95 (applying the probate exception to a civil suit that had federal question jurisdicition because it was brought by an officer of the United States). Starting with the text, 28 U.S.C. § 1332 limits diversity jurisdiction to "suits of a civil nature at common law or in equity," and a commonly cited rationale for the probate exception was that equity jurisdiction at the English Court of Chancery in 1789 did not extend to probate matters. *See Markham*, 326 U.S. at 494 ("It is true that a federal court has no jurisdiction to probate a will or administer an estate, the reason being that the equity jurisdiction conferred by the Judiciary Act of 1789 . . . , which is that of the English Court of Chancery in 1789, did not extend to probate matters."). There is no analogous limit under 28 U.S.C. §§ 1444 and 2410 for federal question jurisdiction. It also strikes the Court as common sense that the probate exception would be narrower in federal question matters where the disputes are not already grounded in state law. In sum, while the Court does not agree that the probate exception can never be applied in federal question cases, the Court finds that the application of the probate exception should be narrower in cases involving federal question jurisdiction instead of diversity jurisdiction.

Turning to the merits, the Court sees the valid arguments on both sides. On one hand, the Court agrees with Petitioner and Mid America that Government Respondents could be seen as improperly interfering with probate proceedings when they appear to be attempting to remove the entire Trust proceeding to federal court; thereby directly interfering with probate proceedings and taking control of the *res* (*i.e.* the Property) in the custody of the state probate court. Mitchell filed her Petition in May 2018 seeking to confirm that she was the successor Trustee and to cancel instruments that had encumbered the Trust's assets, namely the Property, by virtue of fraud. After Respondent McCoy's death, his daughter Ciara McCoy listed the Property as an asset of the McCoy estate, giving the Probate Court *in rem* jurisdiction over the Property through the related action *In Re Estate of McCoy*, LASC Case No. 20STPB03017. *See* Reply at 4-5. This appears to be the exact situation proscribed in *Marshall*: "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." 547 U.S. at 296. The Probate Court was exercising jurisdiction over the Trust and allocating and administering trust assets, which is an *in rem* or *quasi in rem* determination. *See Ehret v. Sanchez*, No. 13-CV-04884-GAF-(JEMx), 2013 WL 4807165, at *2 (C.D. Cal. Sept. 4, 2013)

("And the allocation and administration of trust assets is an *in rem* determination."); *Haroun v. Haroun*, No. 11-CV-08132-RSW-(CWx), 2012 WL 424383, at *3 (C.D. Cal. Feb. 8, 2012) ("[T]he Court finds that both actions involve the administration and restoration of money from a family trust and should thus be categorized as 'quasi in rem.'"). And even if administering trust assets was not considered an *in rem* determination, the Probate Court is still exercising *in rem* jurisdiction over the Property via the related *In Re Estate of McCoy* action, LASC Case No. 20STPB03017, making it improper for this Court to also assume *in rem* jursidction over the Property through this instant action in federal court. The Court is inclined to agree that the probate exception would apply in this situation where there is a related estate action ongoing in Probate Court that is attempting to adjudicate the Property that is also at issue in this Trust action.

On the other hand, however, the Court also agrees with the Government Respondents that the Government has a right to have any issues concerning the HUD Deed and related HUD lien heard in federal court. The interplay of 28 U.S.C. §§ 1444 and 2410 is unequivocal that the United States may remove any action to federal court if it involves quieting title or foreclosing a mortgage or other lien on property on which the United States has or claims a mortgage or lien. Despite Petitioner's arguments to the contrary, the Court agrees with the Government Respondents that there is a genuine dispute as to whether the proposed settlement agreement, which was not properly served upon HUD, would essentially render the HUD Deed void and HUD lien unenforceable. The proposed settlement agreement states that "The 2016 Quitclaim Deed and 2016 Grant Deed should be rescinded, cancelled, annulled, and voided by the Court" and notes that the McCoy Estate is insolvement. *See* Settlement Agreement at 11-12, Petition to Approve Settlement Agreement, Exh. B. Petitioner also contends in her Reply that "because she recorded a lis pendens before HUD loaned money to McCoy, HUD cannot assert an enforceable lien against McCoy's voidable title as a bona fide encumbrancer." *See* Reply at 3 n.1. While it is clear to the Court that it should not resolve essential probate matters, such as determining whether Petitioner is the rightful Trustee successor, the Court finds that it has jurisdiction to adjudicate the validity of the HUD Deed and the enforceability of the HUD lien based on the plain language of 28 U.S.C. §§ 1444 and 2410. The Court finds this to be a situation where it can largely resolve the relevant dispute, limited to the HUD Deed and lien, without assuming general jurisdiction over the Trust. *See Brown v. U.S. Dep't of Heath & Hum. Servs.*, No. 5:10-

CV-94-D, 2010 WL 2927699, at *4 (E.D.N.C. July 22, 2010) ("Removal was based on the unique interplay between 28 U.S.C. §§ 1444 and 2410.  Moreover, the probate exception is a judicially created doctrine that is not set forth in the text of a statute or the Constitution.  Here, the court can resolve the dispute without assuming general jurisdiction over [Petitioner's] estate." (internal citations omitted)).

Taking into consideration the Court's concerns above, the Court would hear further from the parties at the upcoming hearing on how to best move forward on this matter.  Depending on the parties' preferences, the Court is amenable to immediately remanding the matter back to the Probate Court with the understanding that the Court still retains jurisdiction to adjudicate the validity of the HUD Deed and the enforceability of the HUD lien, if the need arises.  The Court is also open to attempting to resolve the issues regarding the HUD Deed and HUD lien first in this Court, then remanding the remaining purely probate issues back to Probate Court.  The parties should come prepared to discuss their suggestions for how to best move forward.  Finally, the Court elects not to award fees as there is a genuine dispute over how to resolve the conflict between 28 U.S.C. §§ 1444 and § 2410 and the probate exception, and there is no binding authority squarely on point.

IV.   **Conclusion**

The Court would ask the parties to come prepared to discuss at the next hearing how to best move this action forward in line with the concerns the Court has delineated above.